UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 95-5546

ODELL WALKER, JR.,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, Chief District Judge.
(CR-94-14, CR-94-99)

Argued: September 24, 1996

Decided: January 8, 1997

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Norman Butler, Charlotte, North Carolina, for Appellant.
Brian Lee Whisler, Assistant United States Attorney, Charlotte, North
Carolina, for Appellee. **ON BRIEF:** Mark T. Calloway, United States
Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

The defendant, Odell Walker, Jr., was charged in two bills of indictment filed July 6, 1994 with a total of 18 counts arising from six armed robberies, all in violation of 18 U.S.C.§§ 2113(a), 2113(d), and 924(c). At Walker's jury trial, the district court refused to suppress identification evidence from a pretrial lineup, all of which defense counsel was unable to attend. The court also denied Walker's motions for a mistrial and judgment of acquittal based on an asserted Brady violation by the prosecution. The jury found Walker guilty on ten of the indictment's 18 counts. Walker now appeals, and we affirm.

I.

The indictments in this case alleged that Walker committed six armed robberies at various banks throughout the Western District of North Carolina between July 14, 1993 and May 23, 1994. Before trial, Walker moved to suppress several eyewitness identifications from a lineup held on July 1, 1994 at the Mecklenburg County Jail. The lineup took place during Walker's detention at the jail pursuant to a criminal complaint charging him with a recent bank robbery which was entirely separate from those charged here. At that time, he had not been charged or indicted in any of the bank robberies that were the subject of the lineup at issue here. Walker's attorney was called as a courtesy by the officers. Although he was otherwise engaged, he managed to attend the lineup while it was being composed and for the last eight witnesses viewing the lineup. He had to leave the lineup while five witnesses viewed it.[1] The district court refused to suppress these eyewitness identifications at Walker's trial because it found that a prosecution had not yet commenced on those offenses.

Walker's jury trial began February 22, 1995 and concluded March 1, 1995. On the third day of trial, Walker's counsel was permitted to

_____

[1] The government voluntarily moved to dismiss the original bank robbery charge on which Walker was being detained. The court granted this motion, and the case went to trial only on crimes involved in the July 1 lineup.

2

inspect internal FBI files because he believed they contained certain unspecified, discoverable material. The defense attorney located in these files several internal FBI memoranda describing tips received from citizen callers during the investigation after pictures of suspects taken from bank surveillance photographs were released to the press. The tips named four persons other than the defendant as the subjects of the pictures. The defense then argued that the government should be sanctioned for failing to disclose this exculpatory material, that the court should declare a mistrial, and for judgment of acquittal based on Brady v. Maryland, 373 U.S. 83 (1963). The court denied these motions. The defense, however, was permitted to cross-examine several government witnesses using the internal FBI documents.

The jury convicted Walker, with respect to five of the robberies, of five counts of bank robbery (18 U.S.C. § 2113(a)) and five counts of armed bank robbery (18 U.S.C. § 2213(d)). Walker was acquitted on five counts of using a firearm during a crime of violence (18 U.S.C. § 924(c)). As to a sixth bank robbery, the jury deadlocked, and the district court declared a mistrial on all three counts pertaining to that crime.

Walker now appeals his convictions arising from the five robberies. He first argues that the lineup procedure denied him his Sixth Amendment right to counsel and that the district court accordingly erred in refusing to suppress the identification evidence. He next contends that the district court erred in denying his motions for a mistrial and judgment of acquittal based on the asserted Brady violations.

II.

The Sixth Amendment guarantees the right to counsel during all "critical stages of the prosecution," including pretrial lineups. United States v. Wade, 388 U.S. 218, 237 (1967). The Supreme Court later clarified that the right to counsel announced in Wade attaches only to lineups conducted "at or after the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Moore v. Illinois, 434 U.S. 220, 226 (1977); Kirby v. Illinois, 406 U.S. 682, 689 (1972).

At the time of the lineup here, Walker had not been indicted or charged in any of the bank robberies that were its subject. Even if the

3

formal stages enumerated in Kirby and Moore are not the only points at which the right to counsel accrues, we are satisfied in this case that a criminal prosecution had not yet been initiated as to the lineup's subject matter. Nothing in the record indicates that the lineup constituted anything other than an investigatory procedure for assembling evidence on the instant robberies. The requisite adversary judicial criminal proceedings simply had not begun as to those offenses.

Nevertheless, Walker contends that his Sixth Amendment right to counsel had attached because the offenses that were the subject of the lineup (bank robberies in the Western District of North Carolina) were so similar to the bank robbery charge for which he was being detained. This argument is without merit.

Another defendant attempted unsuccessfully to raise a similar Sixth Amendment claim in United States v. Kidd, 12 F.3d 30 (4th Cir. 1993), cert. denied, 62 U.S.L.W. 3705 (U.S. Apr. 25, 1994) (No. 93-8489). There, the government contacted the defendant and purchased drugs from him after he had been indicted on drug distribution charges. The defendant argued that the post-indictment offense and pending charge were so closely related that his right to counsel had attached. We, however, concluded that the offenses were factually distinct and independent because they involved different purchasers-informants, occurred at different times, and took place in different locations. That the two transactions involved the same type of crime was insufficient to trigger the Sixth Amendment's application. Kidd, 12 F.3d at 33.

Likewise in this case, the bank robberies at issue in the July 1 lineup and the bank robbery with which Walker then stood charged involved different banks at distinct times and dates between 1993 and early 1994. We therefore reject Walker's contention that his right to counsel had attached as to the offenses that were the subject of the lineup. Accordingly, the district court properly refused to suppress the identification evidence arising from the lineup. On similar facts the Fifth Circuit has come to the same conclusion as do we. United States v. Tyler, 592 F.2d 261 (5th Cir. 1979).

III.

Walker also challenges the district court's denial of his motions for a mistrial and judgment of acquittal based on the government's

4

alleged failure to disclose exculpatory evidence before trial under Brady v. Maryland, 373 U.S. 83 (1963). The exculpatory evidence at issue in this case comprises reports of tips called into law enforcement by citizens naming four individuals other than the defendant as looking similar to photos of bank robbers they had seen in newspapers or on television. The defense did not learn of the existence of these tips until the third day of trial.

Even though information may be exculpatory, no due process violation occurs as long as the Brady material is disclosed to a defendant in time for its effective use at trial. United States v. Smith Grading & Paving, Inc., 760 F.2d 527, 532 (4th Cir.), cert. denied, 474 U.S 1005 (1985). This is so because a defendant's ability to use the information effectively at trial indicates that its delayed disclosure did not affect the trial's outcome. Here, defense counsel received the information before the close of the prosecution's case-in-chief. In fact, the defense was able to cross-examine investigators extensively about the tips and what steps were taken to follow up on them. Moreover, at no time during the trial did defense counsel request a continuance to further pursue this new information.[2] Rather, counsel chose to pursue the more exculpatory, and therefore more risky, measures of moving for a mistrial and later for judgment of acquittal. Although the government should have informed Walker of the tips before trial, we cannot say that their delayed disclosure sufficiently prejudiced his defense to deprive him of due process. See United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir. 1988) (cross-examination can cure prejudice created by Brady violation); Smith Grading & Paving, 760 F.2d at 532 (ability to use exculpatory evidence extensively in cross-examination

_____

[2] The D.C. Circuit rejected a defendant's Brady claim on similar grounds in United States v. Henson, 486 F.2d 1292 (D.C. Cir. 1973). In that case, the defendant asserted that the government's failure to disclose certain documents before trial prevented the defense from developing hypotheses concerning other persons who might have committed the offenses charged. The court concluded that defense counsel's failure to request a continuance, ability to call the other suspects, and ability to argue to the jury in closing that six other persons could have committed the murder with which the defendant was charged indicated that the delayed disclosure did not produce a prejudicial error. Henson, 486 F.2d at 1302 n.10.

5

can remedy <u>Brady</u> violation). For the reasons stated, we are of opinion that the district court properly denied the defendant's motions for mistrial and judgment of acquittal based on the government's asserted <u>Brady</u> violation.**3**

The judgment of the district court is accordingly

<u>AFFIRMED</u>.

_____

**3** We have given the defendant the benefit of the doubt in analyzing his <u>Brady</u> motion. The pictures which were released to the press were found by the defendant's attorney in a file on a robbery of the First Citizens Bank in Bessemer City, not one of the six robberies involved here, and the pictures may well have not been identified with any particular robbery by the witnesses. If it had turned out that the photographs involved were taken during a robbery which was not charged here, they, of course, would be entirely inadmissible under any theory, and the government's position should have been more briefly affirmed than by the reasoning we have related in the body of the opinion.