OPINION
{¶ 1} Appellant, Anthony L. McKinney ("appellant"), filed this appeal seeking reversal of a decision by the Franklin County Court of Common Pleas convicting him of murder, felonious assault, and having a weapon while under a disability. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} The facts showed that on October 13, 2005, four individuals — Terrance Barbour, Sherman Justice, Terrell Craig, and Jermaine Freeman — drove to an apartment *Page 2 
building located at 3676 Cleveland Avenue. The purpose for this trip was to visit Barbour's cousin, "Timmy," and to plan a party celebrating Barbour's release from the Department of Youth Services. When they arrived at the apartment building, three people were in the parking lot, one of whom was identified by Craig and Freeman as appellant. There was a brief confrontation between the two groups at that time.
 {¶ 3} The four discovered that Timmy had moved out of his apartment in the building to another apartment on the other side of Cleveland Avenue. The group found Timmy's apartment and visited him for a brief time. As they exited Timmy's apartment, the group was confronted by an individual named Mickey Hairston. Hairston had a gun, and argued with Barbour.
 {¶ 4} The group went back across Cleveland Avenue to return to their car so they could leave. As they passed through the apartment building, Craig saw Hairston hand a gun to appellant. As Craig got into the driver's seat of their car, he saw appellant, who was standing in the doorway from which the group had just exited the apartment building, begin firing the gun towards him and his group. Craig started to pull the car out of its parking space when he saw that Barbour had been hit by gunfire. Barbour had been struck in the neck by a bullet, and ultimately died from blood loss. In addition, Justice had been shot in the leg.
 {¶ 5} Deputy Brian Jackson of the Franklin County Sheriff's Office arrived at the scene shortly after the shooting. Jackson spoke to Craig, who gave a description of the person he had seen firing the gunshots. Craig actually described two people, "a dark heavyset black dude with braids and a short brown-skinned dude with braids." (Tr. at 180.) Jackson then began searching the area in his cruiser, looking for anyone who *Page 3 
matched the descriptions he had been given. Jackson began his search along Cleveland Avenue south of the buildings because he had been told the shooter had run in that direction.
 {¶ 6} Jackson saw appellant, who fit the first description Craig had given, exiting a drive-through carryout at Northern Lights Shopping Center. Jackson stopped appellant so he could question him about any possible knowledge of the shooting. Appellant was initially evasive about where he was going and his address, but ultimately gave his address as one of the apartments in the building at which the shooting had occurred. Appellant stated that, "I don't have anything to do with that." When asked to what he was referring, appellant said, "[w]hatever's going on over there." (Tr. at 78.) Jackson then put appellant in the back of his cruiser and returned to the scene of the shootings. Craig was then asked if he could identify appellant, and Craig identified appellant as the person who had fired the gunshots. Freeman later identified appellant as the shooter in a photographic array. Appellant was arrested, and his clothes were taken for testing, which revealed the presence of gunshot residue.
 {¶ 7} Appellant was indicted by a grand jury on one count of murder with a firearm specification; three counts of felonious assault, each with firearm specifications; and one count of having a weapon while under disability. After trial, a jury convicted appellant of all of the charges. Appellant then filed this appeal.
 {¶ 8} Appellant alleges two assignments of error, as follows:
 First Assignment of Error
 The State's belated disclosure of favorable, material evidence deprived Appellant of a fair trial because the *Page 4 
disclosure was too late to permit counsel to use it effectively at trial.
 Second Assignment of Error
 Appellant's convictions are contrary to the manifest weight of the evidence.
 {¶ 9} In his first assignment of error, appellant argues that his due process rights were violated because the State provided him with exculpatory evidence ten days before trial, which he argues did not give him sufficient time to effectively use the exculpatory evidence at trial. Appellant argues that this belated disclosure violated his rights as set forth by the United States Supreme Court in Brady v.Maryland (1963), 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215.
 {¶ 10} Ten days before trial, the assistant prosecuting attorney became aware of a report that had been prepared by Lieutenant Mike Harrow of the Franklin County Sheriff's Office. In the report, Harrow indicated that shortly after the shootings, he had spoken to a woman named Carmen who worked at the apartment building. Carmen told him she had seen Hairston and another male known only as KL on the night of the shooting, holding their pants as if they had guns. She also said Hairston and another unknown black male took her from the scene, that both men smelled of gunpowder, and that Hairston hid a gun in one of the apartments and returned to retrieve it later that night.
 {¶ 11} The assistant prosecuting attorney informed defense counsel about the report as soon as it was found. Efforts to locate Carmen before trial were unavailing. Prior to opening statements in the trial, appellant made a motion to dismiss for the failure to disclose the evidence. Alternatively, appellant asked for a continuance of the trial date or for the opportunity to introduce Carmen's statement through Harrow. The trial court *Page 5 
declined to dismiss the case or continue the trial date, but did allow appellant to call Harrow as a witness to testify about the substance of Carmen's statement. Prior to the conclusion of the trial, information was provided to defense counsel that Carmen had been located, and contact information was provided. Appellant did not call Carmen as a witness.
 {¶ 12} "Suppression by the prosecution of evidence that is favorable to the accused and `material either to guilt or to punishment' is a violation of due process." State v. LaMar, 95 Ohio St.3d 181, 184,2002-Ohio-2128, 767 N.E.2d 166, quoting Brady, supra, at 87. In examining the issue, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id., quoting Kyles v. Whitley (1995), 514 U.S. 419, 434, 115 S.Ct. 1555,131 L.Ed.2d 490.
 {¶ 13} Ohio courts have generally held that there is no Brady
violation when disclosure of the possibly exculpatory evidence is made before or even during trial. State v. Iacona, 93 Ohio St.3d 83,2001-Ohio-1292, 752 N.E.2d 937. However, the courts have also recognized that in some instances there may still be a violation of due process rights if the timing of the disclosure significantly impairs the fairness of the trial. The issue becomes whether the Brady material was disclosed to the defendant in time for it to be effectively used at trial. Id., quoting United States v. Smith Grading Paving, Inc.
(C.A. 4, 1985), 760 F.2d 527.
 {¶ 14} In this case, Carmen's statement was provided to defense counsel ten days before the start of trial, which provided the defense with ample time to attempt to locate *Page 6 
her. Moreover, appellant became aware during trial that Carmen had returned to town and was given her contact information. Thus, appellant had the opportunity to call Carmen as a witness, but did not do so. More importantly, the trial court's decision to allow appellant to question Harrow about the substance of Carmen's statement allowed appellant to effectively use the statement at trial. We cannot say that the State's disclosure of Carmen's statement ten days before the start of trial resulted in appellant being denied a fair trial. Therefore, we overrule appellant's first assignment of error.
 {¶ 15} In his second assignment of error, appellant argues that his convictions are contrary to the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. However, in engaging in this weighing, the appellate court must bear in mind the fact finder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. SeeState v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at ¶ 1 of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 16} Appellant points to a number of evidentiary items in support of his claim that his convictions were against the manifest weight of the evidence. First, appellant argues that the two witnesses who specifically identified appellant as the shooter, Craig and Freeman, were not in a position to see that appellant was the person firing the shots *Page 7 
because they were ducking down behind vehicles while the shots were being fired. In addition, in his initial statement to police investigators, Craig stated that he thought there were two shooters. Appellant also argues that Sherman Justice, who was shot in the leg, originally told police investigators that appellant was not the shooter. Finally, Tonia Justice, Sherman's mother, testified that Sherman, upon seeing appellant's picture as part of a television news story about the shooting, said that appellant was not the shooter.
 {¶ 17} At trial, both Craig and Freeman unequivocally identified appellant as the shooter. Even though both were ducking down while the shots were being fired, each nevertheless testified to having been able to see appellant holding the gun and firing the shots. Further, both Craig and Freeman knew appellant prior to the shooting, thus making a mistaken identification less likely. The jury was in the best position to evaluate the credibility of the witnesses, including Craig, Freeman, and Sherman Justice. Based on the evidence that was presented, we cannot say that the jury lost its way in convicting appellant of all of the charges. Consequently, we overrule appellant's second assignment of error.
 {¶ 18} Having overruled appellant's assignments of error, we affirm the decision of the trial court.
Judgment affirmed.
 KLATT and FRENCH, JJ., concur. *Page 1