**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-4844**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUNE RACHEL GARCIA,

Defendant - Appellant.

———————

**No. 06-4845**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TRAVIS HOWARD VIAR,

Defendant - Appellant.

———————

Appeals from the United States District Court for the Western District of Virginia, at Lynchburg. Norman K. Moon, District Judge. (6:05-cr-00006-NKM)

———————

Argued: January 30, 2008          Decided: March 26, 2008

———————

Before MICHAEL, TRAXLER, and KING, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

**ARGUED:** Deborah S. Caldwell-Bono, Roanoke, Virginia; Marc Seguinot, SEGUINOT & ASSOCIATES, P.C., McLean, Virginia, for Appellants. Jean Barrett Hudson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted June Garcia (Garcia) and Travis Viar (Viar) of conspiracy to distribute more than 500 grams of methamphetamine (meth). Both appeal their convictions, and, in addition, Viar appeals his sentence. Garcia contends that her due process rights were violated by (1) the FBI's failure to record her post-arrest interview that, she alleges, contained exculpatory evidence and (2) the government's failure to disclose impeachment material involving one of its witnesses. Because Garcia failed to present evidence of bad faith on the part of the FBI or its agents with respect to the agency's general policy of not recording interviews, and because the impeachment evidence became available in time for effective use at trial, we affirm her conviction. Viar contends that (1) the evidence was insufficient to convict him, (2) the district court erred in admitting two in-court identifications of him by government witnesses, and (3) the district court erred in sentencing by applying a two-level enhancement after finding that he had committed perjury at trial. Because we conclude that substantial evidence supported the jury's guilty verdict against Viar, and there was no reversible error in the district court's admission of his in-court identifications, we affirm Viar's conviction. We also affirm Viar's sentence because the court did not err in applying the enhancement for perjury.

3

I.

In the fall of 2004 the FBI and the Central Virginia Drug Task Force determined that Ciro "Cito" Garcia (Cito) served as the common link in a loosely woven meth distribution operation in central Virginia. Jerry Harper contacted the task force and offered to serve as a confidential informant with respect to Cito's activities, purportedly because Cito had refused Harper's request that Cito stop supplying Harper's parents with meth. As Harper organized a series of controlled buys from Cito, investigators developed evidence that Cito and Viar were drug dealers, that Garcia (Cito's wife) drove Cito to drug deals and was present during several, that Mark Guill facilitated drug deals for Cito and Viar, and that Randy Ellington, Michael Cerillo, George Barbour, Paul Jano, and Charles Ragland (Jerry Harper's father) were some of Cito's customers.

On June 2, 2005, a federal grand jury returned a superceding indictment charging offenses relating to this drug trafficking operation. Count 1 charged Cito, Garcia, Viar, Barbour, Ellington, Cerillo, Anthony Jamerson, and Guill with conspiring to distribute more than 500 grams of meth. Count 2 charged Viar with knowingly using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, the crime described in count 1. Count 6 charged Cito and Garcia with distribution of at least 50 grams of meth on a particular date.

4

Garcia and Viar proceeded to trial, and other charged conspirators entered plea agreements.

Trial began on March 20, 2006. The government offered the following evidence against Viar. Scott Gillespie, James Cash, Jano, and Cerillo all testified that they repeatedly bought meth from Viar. Jano, Cash, Cerillo, Guill, and Ellington testified as follows with further particulars about Viar's drug trafficking. Jano saw Viar sell meth to other customers, and Jano met Viar's supplier, a man known as Cito. According to Cash, Viar identified Cito as his supplier. Cerillo saw Cito at Viar's house on two occasions and understood Cito to be Viar's supplier. Guill saw Viar sell meth, and he introduced potential drug customers to Viar and Cito. Ellington bought meth from Cito, but he did not know Viar. Viar testified in his defense and denied that he had ever bought drugs from Cito and denied that he had ever engaged in a drug transaction with any of the witnesses who testified against him.

The government offered the following evidence against Garcia through the testimony of Guill, Ragland, Harper, and Jano. On two occasions Garcia sold meth that she had stolen from Cito to Guill or his girlfriend, purportedly to fund a buying trip to Wal-Mart. Ragland was present on multiple occasions when Garcia participated in conversations about Cito's drug business. Once, when Cito was in jail for a DUI, Garcia, under instructions from

5

Cito, called Ragland and gave him seven or eight ounces of meth "[t]o get rid of." J.A. 224. Garcia instructed Harper to use code phrases when he called about a drug purchase. On some occasions when Jano bought meth from Cito, the transactions took place in Cito's truck in front of Garcia, who had accompanied Cito.

Three government witnesses gave testimony that minimized Garcia's involvement in Cito's drug trafficking. Cerillo testified that Garcia was also present the two times he saw Cito at Viar's home; on these occasions Viar sold drugs, but Garcia did not witness the sales. Ellington disputed Guill's account that Garcia was present when Ellington purchased meth from Cito. According to Harper, during one of the controlled buys from Cito, Cito conducted the transaction in the bathroom of Harper's apartment, outside of Garcia's presence; Harper also testified that Cito refused to discuss future sales within earshot of Garcia. In testifying in her own behalf, Garcia said that her relationship with her husband Cito had often been troubled; that she objected to his drug use; that she believed she had told investigators that he was a user and not a dealer; and that she was not present for any of the drug deals described by the government's witnesses. One defense witness testified that Guill was dishonest, and another testified that Jano was known to be a liar.

On the last day of the trial, March 22, 2006, the district court granted Garcia's motion to dismiss count 6 (the meth

distribution charge). That same day the jury convicted Viar and Garcia on count 1 (the drug conspiracy charge) and found Viar not guilty on count 2 (the firearm charge).

Four months later, on July 28, 2006, Garcia moved to vacate her conviction, arguing that she was denied a fair trial (1) because the FBI did not tape her interview after she was arrested and (2) because the government had violated its discovery obligations in failing to provide impeachment material in its possession concerning its witness, Harper. Harper had been convicted, based on his guilty plea, in Amherst County, Virginia, of possessing marijuana with intent to distribute and theft of government property worth $200 or more. At Harper's plea proceeding in state court the following information was revealed: Harper, while working as an informant with state law enforcement officers, had lied to the officers about a (potential) controlled purchase of marijuana and had stolen the purchase money that had been advanced by the officers.

Garcia's counsel discovered the details of Harper's state crime on Tuesday, March 21, 2006, a day in the middle of the Garcia-Viar trial when court was cancelled because of bad weather. Garcia's counsel made the discovery when she went to the Amherst County courthouse and listened to a recording of Harper's plea proceeding. Harper testified for the government the next day, March 22, 2006, in the Garcia-Viar trial. The government admitted

its failure to disclose, but argued that because defense counsel had listened to the recording of the plea proceeding before Harper testified, the information was available to impeach Harper. In denying the motion to vacate Garcia's conviction, the district court ruled that her case had not been prejudiced by the late discovery. The court noted that although defense counsel had the information prior to Harper's testimony, counsel had elected not to use the information in cross-examination and did not ask for a continuance to assess the information.

The presentence reports for Garcia and Viar recommended adding a two-level enhancement to each defendant's offense level for obstruction of justice, based upon the perjurious testimony given by each at trial. See U.S.S.G. § 3C1.1. The district court found that both Garcia and Viar committed perjury and applied the enhancement for both. The court sentenced Garcia to 120 months in prison and five years of supervised release, and Viar to 262 months in prison and five years of supervised release. Both appeal. Garcia challenges her conviction on the grounds that her due process rights were violated by (1) the FBI's failure to tape her post-arrest interview, and (2) the government's failure to disclose impeachment evidence about Harper. Garcia does not appeal her sentence. Viar challenges his conviction on the grounds that (1) the evidence was insufficient to support his conviction on the drug conspiracy charge, and (2) the district court erred in admitting

8

his in-court identification by government witnesses Gillespie and Jano. Viar also appeals his sentence, contending that the district court erred in applying the perjury enhancement.

## II.

### A.

Garcia contends that the FBI's decision not to tape her post-arrest interview constituted a bad faith destruction of exculpatory evidence, the value of which was apparent before the destruction. She argues that without an audio recording preserving "the questions posed, the answers given, the tones of voice[] used, [and her] demeanor," she was denied due process and a meaningful opportunity to present a complete defense. Appellants' Br. at 26. According to the two FBI agents who interviewed Garcia, it is FBI policy not to record interviews.

The decision not to record an interview amounts to the failure to preserve evidence that might have been useful, rather than the destruction of evidence. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process" or the opportunity to present a complete defense. Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Garcia presented no evidence of bad faith on the part of the FBI in adopting the non-

9

recording policy or on the part of its two agents in following it. This claim is without merit.

B.

Garcia also argues that although her counsel discovered, the day before Harper's testimony, his plea recording with the information about his theft of government "buy" money and his lies to investigators, there was insufficient time to make effective use of the information at trial. According to Garcia, the government's failure to disclose this critical impeachment evidence violated her due process rights. The government admits its error, but argues that because Garcia's counsel had the information before Harper testified, the failure to disclose does not undermine confidence in the outcome of the trial.

The suppression by the prosecution of evidence material to the credibility of a prosecution witness violates due process. See Brady v. Maryland, 373 U.S. 83, 87 (1963). To establish a Brady violation, a defendant must show that the undisclosed information was material and favorable to the defense. Moore v. Illinois, 408 U.S. 786, 794-95 (1972). Evidence is material if there is a reasonable probability that its disclosure would have produced a different result, that is, "a probability sufficient to undermine confidence in the outcome" of the trial. United States v. Bagley, 473 U.S. 667, 682 (1985) (quotation and citation omitted). We have held that there is no constitutional violation

10

in the government's failure to disclose impeachment evidence when defense counsel is aware of the evidence in time to make effective use of it at trial. United States v. Smith Grading & Paving, Inc., 760 F.2d 527, 532 & n.6 (4th Cir. 1985).

As Garcia points out, the government presented Harper as a concerned son who became a confidential informant because of the harm that Cito was causing to his parents by supplying them with meth. Garcia argues that had the impeachment material been disclosed at the appropriate time, her counsel could have painted Harper as a thoroughly deceitful person who had every motivation to lie because his unindicted father (Ragland), a major mover of meth, owed a substantial debt to Cito, his supplier. Harper, in other words, was trying to head off federal prosecution of his father and was trying to bring about Cito's conviction, which would effectively prevent Cito from attempting to collect the substantial drug debt owed to him by Harper's father. Harper, however, was not the only witness who testified that Garcia was actively engaged in the drug trade: Jano testified that Garcia accompanied Cito to drug sales and was present during sales; Guill testified that Garcia sold him meth that she stole from Cito; and Ragland (Harper's father) testified that Garcia been involved in many conversations about Cito's drug business and had asked Ragland to dispose of a quantity of meth when Cito was in jail. Further, Ragland's own testimony revealed his addiction and debt, and the

11

defense knew that he had not been charged with participation in the conspiracy. Thus, an argument about a father-son plot to evade federal prosecution and a drug debt was readily available to the defense without the information revealed at Harper's plea proceeding.

Ironically, Harper's testimony was favorable to Garcia in some respects. Harper testified that Cito took him to a different room, away from Garcia, to conduct a drug sale and that Cito refused to discuss future sales within earshot of Garcia. This testimony supported Garcia's contention that she was not involved in Cito's drug business.

Furthermore, Garcia's counsel uncovered the details of Harper's plea proceedings the day before Harper testified. The plea proceedings were neither protracted nor complicated and could have been used to impeach Harper when he testified. If one evening provided insufficient time for Garcia's counsel to determine how best to use the information, she could have moved for a continuance. No such motion was made. In these circumstances, it appears that the information was available in time for it to be used effectively.

In sum, Garcia has failed to demonstrate a reasonable probability that the outcome of her trial would have been different if the government had made timely disclosure of Harper's plea proceedings. Garcia's counsel uncovered the information just in

12

time to save the government from what would have been a material failure to disclose impeachment material.

### III.

### A.

Viar contends that the evidence was insufficient for the jury to convict him of conspiracy to possess meth with intent to distribute as charged in count 1. The jury's guilty verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). To prove the conspiracy charge against Viar, the government was required to establish that (1) an agreement existed between two or more persons to possess meth with intent to distribute, (2) Viar knew of the conspiracy, and (3) he knowingly and voluntarily became a part of the conspiracy. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc).

Viar contends that the only evidence of his involvement with the charged conspiracy "rested largely" upon the testimony of cooperating government witnesses, some of whom were co-conspirators and all of whom either benefitted or hoped to benefit by cooperating. The jury was made aware that these witnesses had committed drug offenses themselves and that they stood to gain by cooperating with the government. The bearing of these factors on the credibility of the witnesses was for the jury to determine,

13

Burgos, 94 F.3d at 862, and the jury found them to be sufficiently credible to return a guilty verdict against Viar on the conspiracy count. As a result, there was substantial evidence that Viar was a distributor of meth and that Cito was his supplier; that Viar sold substantial quantities of meth to certain customers; and that these customers, in turn, sold the meth to others. The evidence thus established that Viar knowingly participated in a conspiracy to possess meth with the intent to distribute.

B.

Viar also contends that the district court erred in admitting the in-court identifications of him by Gillespie and Jano. According to Viar, the prosecutor impermissibly coached these two witnesses in their efforts to locate Viar in the courtroom. Because Viar failed to make a contemporaneous objection to the admission of this identification testimony, our review is for plain error. We may correct an error not brought to the attention of the trial court if (1) there is an error (2) that is plain and (3) that affects substantial rights. "If all three [of these] conditions are met, [we] may then exercise [our] discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 467 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993) (quotations omitted; last alteration in original)).

14

When Gillespie and Jano were testifying, the prosecutor asked each of them to identify Viar. Viar claims that in response both witnesses pointed at someone other than Viar. The prosecutor then asked each witness if he was pointing at the person (Viar) sitting next to Mr. Howard (Viar's lawyer), and each responded in the affirmative. To begin with, the jury would have observed whether Gillespie and Jano had any difficulty in identifying Viar at trial. Thus, the circumstances of the identification were available to the jury for its consideration in assessing the credibility of these two witnesses and in weighing the evidence. Even if we assume plain error (that is, the identifications resulted from impermissible suggestions by the prosecutor), the error did not affect Viar's substantial rights. At least four other government witnesses identified Viar, and Viar does not challenge their in-court identification of him. As a result, there is no ground for us to correct any error in the in-court identification of Viar by Gillespie and Jano.

## C.

Finally, Viar contends that the district court erred when it enhanced his sentence for obstruction of justice, specifically for perjury in his trial testimony. According to Viar, the court applied the enhancement without finding each element of perjury. Section 3C1.1 of the sentencing guidelines provides for a two-step increase in offense level "[i]f . . . the

15

defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense." Perjury counts as obstruction of justice. U.S.S.G. § 3C1.1 cmt. n.4(b) (2008). A defendant commits perjury "if [he] gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). A perjury enhancement must be upheld if the district court "makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." Id. at 95.

Viar's presentence report recommended that he be given a perjury enhancement based on his testimony that he had never dealt in meth or bought it from Cito. Viar's testimony went to the ultimate issue before the jury, this is, whether he conspired to posses meth with intent to distribute. In considering Viar's objection to the recommended enhancement, the district court noted that it was required to find the elements of perjury in order to impose the enhancement. In conducting its evaluation, the court determined that "the jury could not have reached the result it did if [it] did not decide that the other[] [witnesses] were telling the truth and he [Viar] was testifying falsely," J.A. 462. The court thus found that "the evidence is pretty overwhelming that

16

[Viar] testified falsely to a material fact, with intent to deceive." J.A. 463. Viar, of course, did not contend that his testimony was affected by confusion, mistake, or faulty memory. The district court's findings, read in context, incorporated each of the elements of perjury as required by <u>Dunnigan</u>. There was no error in the application of the perjury enhancement.

* * *

Garcia's conviction is affirmed, and Viar's conviction and sentence are affirmed.

<u>AFFIRMED</u>

17